UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

FILED
MAY – 9 2023
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.   ) | No. **4:23-cr-00236-HEA** |
| ) | |
| ) | |
| GAUTAM JAYASWAL, M.D., ) | |
| ) | |
| Defendant. ) | |

## INFORMATION

The United States Attorney charges that:

### BACKGROUND

At all times material to this Information, unless otherwise specified below:

1. Since in or about 1986, Defendant Gautam Jayaswal, M.D., has been a licensed medical doctor, working primarily as an emergency room physician. At times relevant to this Information, the Defendant was licensed in at least eight states, including Missouri.

2. At times relevant to this Information, the Defendant was employed by, or contracted with, companies that provided health care-related services and submitted reimbursement claims to Medicare, Medicaid, Tricare, and other health care benefit programs for services that the Defendant purportedly provided.

### Relevant Medicare Provisions

3. The United States Department of Health and Human Services, through the Centers for Medicare and Medicaid Services (CMS), administers the Medicare Program, which is a federal health benefits program for the elderly and disabled. There are four parts to Medicare, each part

1

providing coverage for different health care services: Part A (hospital and inpatient services); Part B (outpatient services); Medicare Part C (Medicare Advantage Plans); and Part D (prescription drugs).

4. Medicare Part B reimburses health care providers for covered health services provided to Medicare beneficiaries in outpatient settings. The covered services include, but are not limited to, durable medical equipment ("DME") and diagnostic tests that have been determined to be medically necessary and ordered by a medical doctor, nurse practitioner, physician assistant, or other Medicare authorized provider (referred to collectively as "doctor" or "physician."). As to diagnostic tests, Medicare Part B reimburses for diagnostic tests only if, among other requirements, the tests were ordered by a physician treating the beneficiary, that is, the physician furnished a consultation or treated a beneficiary for a specific medical problem and used the results of the tests in the management of the beneficiary's specific medical problem.

5. The Medicare Advantage Program, known as Medicare Part C, offers beneficiaries a managed care option by allowing individuals to enroll in private health plans rather than having their care covered through Medicare Part A or Part B. CMS contracts with Medicare Advantage programs to provide medically necessary health services to beneficiaries; in return, CMS makes monthly payments to the Medicare Advantage programs for enrolled beneficiaries.

6. CMS acts through fiscal agents called Medicare Administrative Contractors, or "MACs," which are statutory agents for CMS for Medicare Part B. The MACs are private entities that review claims and make payments to providers for services rendered to Medicare beneficiaries. The MACs are responsible for processing Medicare claims arising within their assigned geographic areas, including determining whether the claim is for a covered service.

2

7.  To receive Medicare reimbursement, providers must make appropriate application to the MAC and execute a written provider agreement. The provider agreement obligates the provider to know, understand, and follow all Medicare regulations and rules. After successful completion of the application process, the MAC assigns the provider a unique provider number, which is a necessary identifier for billing purposes.

8.  Medicare providers must retain clinical records for the period required by state law or five years from the date of discharge if there is no requirement in state law.

### Defendant's Enrollment in Medicare

9.  On or about December 2016, September 2017, January 2018, July 2018, August 2018, February 2019, May 2019, and July 2019, the Defendant signed Medicare enrollment applications and certified therein:

> I have read and understand the Penalties for Falsifying Information, as printed in the application. I understand that any deliberate omission, misrepresentation, or falsification of any information ... contained in any communication supplying information to Medicare ... [may be criminally prosecuted] . . .
>
> I agree to abide by the Medicare laws, regulations and program instructions . . . including the Federal anti-kickback statute.
>
> I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

10. On or about December 2016, January 2017, September 2017, January 2018, February 2018, September 2018, October 2018, May 2019, and July 2019, the Defendant signed Medicare reassignment of benefit forms—certifying that he understood that he was "required to ensure strict compliance with Medicare regulations, including payment policy and coverage guidelines."

3

### Relevant Medicaid Provisions

11.     The Medicaid Program is jointly funded by the states and the federal government. The Medicaid Program reimburses health care providers for covered services rendered to eligible low-income Medicaid recipients. At times relevant to this Information, the Defendant was an enrolled Medicaid provider in several states, including but not limited to Missouri, Kansas, and Texas.

### Count 1
### Conspiracy
### 18 U.S.C. § 371

12.     Paragraphs 1 to 14 are incorporated by reference as if fully set out herein.

13.     Beginning on or about 2017 and continuing to on or about 2021, in the Eastern District of Missouri and elsewhere,

**GAUTAM JAYASWAL, M.D.,**

the Defendant herein, and persons known and unknown, did unlawfully, willfully, and knowingly combine, conspire, and agree with persons known and unknown to the grand jury to commit the following offenses against the United States: to defraud a health care benefit program and to obtain, by false and fraudulent representations, money owned by and under the control of a health care benefit program, in connection with the delivery and payment of health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347(a)(1) and (2).

### Purpose of the Conspiracy

14.     The purpose of the conspiracy was for:

   a.   the Defendant and others to receive illegal payment in return for ordering and providing medically unnecessary durable medical equipment and genetic tests (collectively referred to as "Health Care Services") for patients with whom the Defendant did not have a doctor-patient relationship; and

4

      b.      the Defendant and his co-conspirators to enrich themselves by causing health insurers to reimburse for medically unnecessary Health Care Services.

## Manner and Means of the Conspiracy

15. Telemedicine or telehealth refers to the practice of caring for patients when the health care provider and the patient are in different physical locations. Using audio and video technology, telemedicine health care professionals evaluate, diagnose, and treat patients when they are in different locations.

16. It was part of the conspiracy that from on or about 2017 to on or about 2021, the Defendant contracted with several companies purportedly to perform work as a telemedicine doctor. Those companies included but were not limited to the following: Barton & Associates, DialCare Co, Doctegrity, Doctorology, LLC, USA Management Resources, Rossiter and Cummaro Enterprises, LLC, RAS/Sunshine Medical, Fix Ur Rx, Rocky Mountain Health, LSW Management Solutions, Physician Acquisition Pas, and MP Network. Through these companies, the Defendant ordered medically unnecessary Health Care Services for thousands of patients. The Defendant's work with these companies was in addition to his work as an emergency room physician at health care facilities in Missouri and other states.

17. It was part of the conspiracy that between January 2017 and May 2021, the Defendant fraudulently ordered one or more orthotic braces for approximately 1,433 patients. The DME companies that supplied these various braces received approximately $1,366,123.28 from Medicare Part B based on the Defendant's fraudulent orders for orthotic braces. The Defendant knew that these braces were not medically necessary when he submitted these fraudulent orders. Furthermore, the Defendant knew that companies were submitting claims to

Medicare for the orthotic braces that were the subject of his fraudulent orders.

18.  It was further part of the conspiracy that between June 2018 and September 2021, the Defendant fraudulently signed genetic test orders and caused the laboratories receiving his genetic test orders to submit reimbursement claims to health care benefit programs. Medicare Part B paid approximately $14,707,687.57 for the 2,061 Medicare Part B patients form whom the Defendant was listed as the ordering physician. The Defendant knew that these genetic tests were not medically necessary when he submitted these fraudulent orders. Furthermore, the Defendant knew that companies were submitting claims to Medicare for the genetic tests that were the subject of his fraudulent orders.

## Overt Act

19.  On June 16, 2020, Superior Medical Supplies, LLC submitted a claim to Medicare for Patient V.B. to receive multiple braces (2 knee and 2 additional lower extremity braces). The Defendant's prior order of those braces for Patient V.B. was done in furtherance of the conspiracy. Patient V.B. received those braces within the Eastern District of Missouri.

SAYLER A. FLEMING
United States Attorney


 /s/ Derek J. Wiseman
DEREK J. WISEMAN #67257MO
Assistant United States Attorney

UNITED STATES OF AMERICA )
EASTERN DIVISION )
EASTERN DISTRICT OF MISSOURI )

I, Derek J. Wiseman, Assistant United States Attorney for the Eastern District of Missouri, being duly sworn, do say that the foregoing information is true as I verily believe.

/s/ Derek J. Wiseman
DEREK J. WISEMAN #67257MO

Subscribed and sworn to before me this  22nd  day of March, 2023.

/s/ Gregory J. Linhares
CLERK, U.S. DISTRICT COURT

By:  /s/ David L. Braun
DEPUTY CLERK